## 9176

### SMITH & FURBUSH MACHINE CO. v. JOHNSTON *ET AL.*

#### (86 S. E. 489.)

SALES. CONTRACTS. BREACH OF WARRANTY. EVIDENCE. COMPROMISE. OFFERS. DAMAGES.

1. SALES—WARRANTY—EVIDENCE.—A *warranty expressed in a written contract of sale cannot be enlarged by parol testimony.*

2. CONTRACTS—MERGER—EVIDENCE.—A written contract operates as a merger of prior written negotiations, or a prior written instrument not made a part of the subsequent contract.

3. EVIDENCE—OFFERS OF SETTLEMENT.—An offer of settlement ·held properly excluded from evidence, especially where ·there was no proof that it was authorized by the party.·

4. DAMAGES.—A party injured by another's breach of contract must exert himself by reasonable effort and expense to minimize his damages.

5. CONTRACTS—DAMAGES.—In actions for damages for breach of contract, in the absence of fraud or oppression, the Courts look to the natural and direct, rather than remote, consequences; and· the burden is upon the claimant to prove with reasonable certainty the nature and extent of his loss.

6. SALES—BREACH OF WARRANTY—DAMAGES.—A charge allowing recovery in an action on a contract of sale of actual and reasonable damages which were within the contemplation of the parties when the contract was made, and which resulted naturally and proximately from its breach, during such time as was reasonably necessary to ascertain the existence of such breach, or that same could not be remedied by the exercise of due care, approved as not prejudicial to the purchaser.

7. SALES — BREACH OF WARRANTY. — The damages which buyers of machinery for reweaving jute bagging could recoup against the seller in an action for the price for defects in the machinery was the difference betwen the actual value of the machines and their value if ·they had been as warranted, plus reasonable expenses incurred in efforts to remedy defects and reasonable compensation for the trouble.

Before MOORE, J., York, July, 1914.    Affirmed.

FOOTNOTE.—As to proof of oral warranty when sale is in writing, see note in 12 L. R. A. 633; as to rights to show parol warranty in connection with a contract of sale of personalty, see note in 19 L. R. A. (N. S.) 1183; as to admissibility of parol evidence to affect terms of contract of warranty, see notes in Ann. Cas. 1912a, 781.

Action by Smith & Furbush Machine Company against T. L. Johnston and J. B. Creighton, doing business under the name and style of Enterprise Manufacturing Company. From a judgment for plaintiff, the defendants appeal upon the following exceptions:

1. Because his Honor erred in refusing to admit, and in striking out, all testimony offered by defendants tending to establish failure of the machinery in question to work sugar sacks, and to establish the damage resulting therefrom; the error being, that defendants were induced to purchase said machinery by plaintiff's representations and guarantee that same would successfully work sugar sacks.

2. Because his Honor erred in refusing to submit to the jury testimony offered, and in not allowing defendants to offer testimony, tending to show an offer of settlement (not of compromise) made by plaintiff to defendants through Messrs. Smythe, Lee & Frost, as attorneys for plaintiff; the error being, that such testimony given and offered was sufficient to be submitted to the jury upon said question of settlement.

3. Because his Honor erred in charging the jury, in effect, that if the defendants, notwithstanding the failure of the machinery to come up to the requirements of the contract in substantial particulars, while refusing to accept same as in compliance with the contract, nevertheless retained the same with the assent of the plaintiff without waiving the objection to the failure of the same to come up to contract, then the defendants would not be liable for the whole contract price, but would be liable for the contract price, less the reasonable cost and expenses of remedying such particulars in which the machinery failed to come up to contract; the error being, in limiting the amount to be deducted from the contract price to the reasonable cost and expenses of remedying such defects, and without allowing any deductions for loss arising from overhead charges and from other causes proved to

have been sustained while operating said machinery while such defects were being remedied.

4. Because his Honor erred in limiting plaintiff's guarantee of machinery to its having a capacity of thirty rolls of bagging, fifty yards to the roll, and of standard width and weight; the error being, in not including in the guarantee that the bagging manufactured on said machinery from jute bagging scraps would have the strength of the original bagging; and, further, that said machinery would work sugar sacks.

5. Because his Honor erred in limiting defendant's damages resulting from failure of plaintiff's guarantee "to such actual loss as might so accrue during such time as would reasonably be necessary to remedy such defects or to ascertain that same could not be remedied by exercise of due care;" the error being, in imposing upon defendant, and not upon plaintiff, the duty of remedying said defects or ascertaining that same could not be remedied.

6. Because his Honor erred in charging: "It is a well settled rule of law that one who is injured by a breach of a contract is required to exert himself to lessen the damage resulting from such breach of the contract, and such effort would require the reasonable expenditure of money." And, further, in charging: "If you find from the evidence that the expenditure of a certain sum of money would have made the machinery purchased in all respects conform to the terms of the contract, then the measure of damages—that means to which the defendants would be entitled in such case— would be just what sum so expended would have made the machinery so purchased to conform to the contract, including a fair and reasonable sum for trouble and expenses;" the error being, in imposing upon defendants the duty of expending skill and money in altering the machinery so as to conform with contract, and in not imposing such duty and expenditure upon plaintiff, although such duty was imposed by the contract between plaintiff and defendant, and

although defendants promptly notified plaintiffs of such defects in the machinery.

7. Because his Honor erred in charging: "The defendants cannot recover damages on account of the alleged purchases of sugar sacks and the loss alleged in connection therewith, for the reason, as I remember it from the testimony, that that purchase of sugar sacks was not made until after they discovered—the defendants discovered—that this particular machinery could not manufacture sugar sacks as they claim was represented. I think I ruled out that evidence on that ground, didn't I?" Mr. Wilson: "Not on that ground, your Honor, but upon the ground that we paid five thousand dollars afterwards." The Court: "Yes, sir; but had waived the objection. That is the ground upon which I say you cannot take into consideration as a matter of damages;" the error being, that the same was a charge upon the facts, and even did not correctly state the facts, as the testimony clearly shows that the sugar sacks were purchased long before it was discovered that said machinery would not work sugar sacks. And, further, there was no evidence that defendants had ever waived the objection, but the evidence is overwhelming that such objection had not been waived.

8. Because his Honor erred in charging: "That if the defendants would sustain less loss by closing down said machinery than by operating said machinery, then it would be the duty of the defendants to pursue that course which would lessen the damages;" the error being, in requiring the defendants, on their own motion and judgment, to discontinue a business entered into on the faith of a contract made with plaintiff, and eliminating all prospects of future improvements.

9. That his Honor erred in charging: "The defendant cannot recover any damages arising from the operation of said machinery due to alleged defects after the discovery of said defects;" the error being, to excuse the plaintiff from all damages resulting from the operation of machinery after

discovering defects therein, although such defects might be provided against by plaintiff's guarantee set out in their contract with defendants and might be capable of being remedied.

10. That his Honor erred in charging: "The defendants cannot recover any damages alleged in the answer as overhead charges, such not being the proximate result of the breach of the contract;" the error being, that same is a charge on the facts; and, further, the testimony shows that such damages from overhead charges were a proximate result of the breach of contract, and of a failure of plaintiff's guarantee, and in contemplation of the parties at the time said contract was entered into.

11. Because his Honor erred in refusing defendants' motion for a new trial, and in holding in the order refusing such motion that "there was no warranty as to the machinery in question that sugar sacks could be used therein, but only a representation that to a certain extent this could be done." And that "if such representation could have any effect, it would be effective to support a rescission of the contract; and the retention of the property and part payment therefor with knowledge of the untruthfulness of such representation was a waiver of any such defense." "The fact that there was no warranty, but only a representation as to the adaptation of the machinery for the use of sugar sacks would exclude damages arising from the operation of the machinery after the discovery of such defects, and this would exclude overhead charges due to any such defect after the discovery thereof;" the error being, that testimony offered showed that plaintiff's representation in question amounted to a warranty, and was guaranteed in the written contract, and that such representation was an inducement, which led defendants to contract for the purchase of said machinery; and, further, in limiting the effect of said representation to support a rescission of the contract; and, further, that testimony showed that said sacks were purchased before it was

ascertained that said representation was untrue, and that the only payment made by defendants on the purchase price of machinery was with the express stipulation that the same should not be considered as an acceptance of the machinery.

12. Because his Honor erred in limiting the admission of testimony as to damages resulting from deficiency in capacity of machinery; defective bagging sold in consequence of defective machinery; depreciation in the value of raw material purchased in the season of 1907 and carried over, and overhead charges, as only being relevant on the question of showing what would be the difference in value between the machinery plant here as contracted to be sold and the value of it as actually delivered, and not as setting up any specific element of damage; the error being, that testimony on either, or all, of said points was admissible as tending to establish the allegation contained in defendants' counterclaim, as set up in their answer.

*Messrs. Wilson & Wilson,* for appellant, cite: *As to warranties:* 30 A. & E. Enc. L. 129, 136, 137; 24 *Ib.* 1091; 11 S. C. 337. *Damages:* 3 Exchequer 341; 74 S. C. 205.

*Mr. J. Harry Foster,* for respondent.

August 19, 1915.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiff brought this action to recover $4,150, the balance of the purchase price of machinery sold to defendants, with interest from March 1, 1907. Defendants denied any liability, and set up a counterclaim for damages on account of defects in the machinery and a breach of warranty of its capacity. The jury found for plaintiff $4,255.32, which is a little over $2,000 less than the amount due under the contract, showing that defendants' counterclaim was sustained to that extent.

On September 24, 1906, plaintiff wrote defendants, in reply to their inquiry, offering to furnish them "the most up-to-date and successful machinery on the market for handling jute bagging scrap, opening and reweaving.same into new bagging, the same having strength equal to the original"—the outfit to cost $6,880. Later, plaintiff's representative called on defendants, and, after they had discussed the matter with him, and explained to him that the outfit offered would not produce sufficient output to meet the necessary fixed charges of the business and allow a margin for profit, and that their going into the business depended upon the production, as compared with the fixed charges of operation, he offered them a larger outfit for $9,150. This offer was made in the form of a letter, dated October 8, 1906, addressed to defendants. It was formally accepted by defendants, and became the contract between the parties. The relevant portions of it read as follows: "Dear Sirs: In complying with your request to furnish you with our best price on the necessary machinery for a complete plant for manufacturing jute bagging from scrap bagging, the outfit machinery to have the capacity of thirty (30) rolls of bagging, fifty (50) yards to the roll, to be of the standard width and weight when rolled, beg to submit the following proposition: * * * The above price includes the time of man to erect and start machinery, * * * our man is to remain for a period of two weeks after the plant is in operation, and to give all the information and assistance in instructing their men how to operate the machinery. * * * The above machinery will have all the improvements brought out by actual experience, to be built in a first-class manner and guaranteed to be as represented. * * * In connection with the above machinery will say that we guarantee the same to be of first-class quality in every respect, and also agree to cover any latent defects that may arise in the machinery that can be in any way attributed to any neglect on the part of our man."

According to their testimony, defendants discovered, within two weeks after operations began, which appears to have been about March 1, 1907, that the outfit was deficient in capacity, and also in other respects of which they notified plaintiff, who insisted that the deficiency in production was due to the lack of skill and experience of defendants' help, and that, if the machines were properly operated, they would turn out the production guaranteed.

On March 14, 1907, defendants wrote plaintiff: "We expect to send you a check tomorrow for $5,000 (which they did) to be applied to our account, but this is not to be construed as an acceptance of the outfit, as we expect you to carry out your part of the contract, before we complete payment." In the same letter, as in previous and subsequent letters, complaint of alleged defects and breaches of warranty were made, which defendants insisted plaintiff should make good. In response to these complaints, plaintiff's representative visited and examined the plant and its operation, and according to his testimony, the deficiency in production was due to the lack of skill and experience in its operation. Defendants' testimony tended to prove their contentions.

Defendants denied any liability to plaintiff, on the ground that the outfit was worth less than the amount they paid, and alleged, as the basis of their counterclaim, besides some less important defects in the machines, that plaintiff represented and warranted that the daily capacity of the outfit would be thirty rolls of bagging, fifty yards to the roll, of standard width and weight, and of strength equal to the original, and that the machinery would successfully work sugar sacks, varying proportions of which are found in the jute scrap bagging sold by the cotton mills, and purchasers of such scrap bagging have to buy the sugar sacks along with the jute scrap to get the latter at profitable prices; that the machines would not produce the quantity guaranteed—the average output being about twenty-four rolls a day—and

that they would not make bagging of the same strength as the original, and that they would not work sugar sacks. The items of the counterclaim are as follows: Seven thousand six hundred dollars, increased cost of production from the time they began operations, on account of what are called "overhead charges;" that is, the fixed charges of the business,—such as salaries of manager and superintendent, rent, power, insurance, taxes, etc., which would have been no more, if the production had been as guaranteed; $1,650, loss sustained in the depreciation in value of raw material purchased in 1907, for the first season's operations, and carried over because of the failure of the machinery to work it up, the price declining in the meantime; $10,000, on account of the necessary reduction in price of the bagging made, because it was not of the weight and strength which the machines were guaranteed to make; $10,014.32, on account of the failure of the machines to work sugar sacks.

The Court excluded evidence offered to prove damages growing out of the alleged failure of the machines to work sugar sacks, and instructed the jury that defendants were not entitled to recover anything on that item of their counterclaim. This ruling was correct, because there was no warranty that the machines would work sugar sacks. The written warranty is that they would work "jute bagging," and this cannot be enlarged by parol testimony. *McLaughlin* v. *Norton,* 19 S. C. L. (1 Hill) 383; *Stuckey* v. *Clyburn,* 25 S. C. L. (Chev.) 186; *Gazoway* v. *Moore,* 16 S. C. L. (Harp.) 400; *Wood* v. *Ashe,* 32 S. C. L. (1 Str.) 407; *Railway* v. *Seigler,* 24 S. C. 128; *Lagrone* v. *Timmerman,* 46 S. C. 372, 24 S. E. 290; *Lumber Co.* v. *Evans,* 69 S. C. 100, 48 S. E. 108.

For the same reason there was no error in omitting from the statement of the warranty to the jury any reference to the strength of the bagging made. The letter of September 24th did contain a warranty that the bagging made would be of the same strength as the original, but the letter of October

8th, which became the contract of the parties, does not contain such a warranty. The cases above cited show that the letter of October 8th is conclusively presumed to embody the whole contract between the parties. See, also, 2 Page on Contracts, sec. 1189, *et seq.,* and especially section 1190, in which the author says: "While the written contract usually acts substantially as a merger of prior or contemporaneous oral negotiations, it also operates as a merger of prior written negotiations, as where it merges prior letters between the parties, or a prior written instrument not made part of the subsequent contract."

Nor was there error in excluding evidence of an offer of settlement. The policy of the law is to encourage parties to settle out of Court. Therefore, they are not to be prejudiced in subsequent litigation by proof of unsuccessful efforts to settle. Besides, there was no proof that the offer was made by one having authority to make it.

The damages sought to be recovered as "overhead charges" are thus estimated by defendants: Allowing six weeks in each year for interruptions from all causes, such as holidays, breakdowns, etc., the guaranteed production for five and three-fourths years would have been 47,610 rolls. The actual production was 36,257, making a shortage of 11,353. The "overhead charges" were $4,450 per annum, or $25,537.50 for the whole time. This amount divided by the actual production makes a cost of 70 cents per roll for the fixed charges, which, divided by the guaranteed production, would make a cost of 53.5 cents per roll, the loss being, therefore, 16.5 cents per roll, which, multiplied by the actual production, shows a total loss or extra cost of $5,982.40. The Court instructed the jury that defendants could not recover such damages, because they were not a proximate result of the alleged breach of warranty, nor within the contemplation of the parties to the contract.

In view of the testimony that the size of the plant was increased, with the knowledge of plaintiff, to insure produc-

tion sufficient to meet "overhead charges," and a surplus for profit, and plaintiff's express warranty of the production which was estimated to be necessary for that purpose, the parties may well be supposed to have contemplated damages arising from the failure of the outfit to make the production guaranteed. But the testimony shows that defendants had to begin operations with unskilled and inexperienced help, no other being available, and, therefore, the parties did not, and could not in reason, expect the best results, until the help had been trained to properly operate the plant. Before this was done, defendants discovered that the machines would not make the output guaranteed. Under these circumstances, they should have rescinded the contract, and returned or offered to return the machinery; or, retaining it, they should have made such repairs to the machines and additions to the plant as were necessary to remedy the deficiency and rely upon the warranty to recover or recoup for the expenses incurred in reasonable efforts to do so, and for such losses as were sustained during such reasonable time as would be required for that purpose. *Parker* v. *Pringle,* 33 S. C. L. (2 Str.) 242. They were required to do this under the rule that one injured by the breach of a contract must exert himself by reasonable effort and expense to minimize his damages. Reason and justice forbid that defendants should be allowed to go on operating the plant and increasing their damages for years at plaintiff's expense in the face of knowledge that it was not turning out the production guaranteed.

In awarding damages for breach of contract, in the absence of fraud or oppression, the Courts look to the natural and direct rather than to remote consequences, and adopt the most certain rather than conjectural and speculative standards of ascertaining them, and exclude such as could have been avoided by reasonable effort and expense; and the burden is upon him who claims them to prove with reasonable certainty the nature and extent of

his loss. Aside from the length of time for which defendants claim damages so estimated, after they knew of the alleged defects in the machinery, it will be seen that their estimation depends upon a number of contingencies, such as skill and diligence in operating the plant, thrift and economy in the conduct of the business, and others as uncertain and difficult to ascertain.

The Court adopted the more certain and satisfactory standard for the admeasurement of the defendants' damages in the following instructions to the jury: "If the machinery in question, when properly operated, failed to fulfill such guaranty, then the defendants would have the right to recover from plaintiff by way of counterclaim any damages, actual and reasonable, natural and proximate, resulting from such failure. That is to say, such damages as were within the actual contemplation of the parties at the time, or so far as the same should have been reasonably within the contemplation of the parties at the time, as damages which would probably result from such failure; *but such damages would be limited to such actual loss as might so accrue during such time as would reasonably be necessary to remedy such defects or to ascertain that same could not be remedied by exercise of due care."* The italicized part of this instruction shows that defendants were allowed to recover for their losses and expenses in remedying the defects during such reasonable time as was necessary to discover and remedy them. The jury was also instructed that the measure of damages for other defects in the machines was the difference between the actual value of the machines and their value, if they had been as warranted, and that defendants were entitled to recover reasonable expenses incurrd in their efforts to remedy such defects and reasonable compensation for their trouble. *Standard Supply Co.* v. *Carter,* 81 S. C. 181, 62 S. E. 150; 2 Sedg. on Damages, 767. The charge fairly and substantially met the justice of the case, and it was favorable enough to defendants in that

the Court gave the jury wide latitude in finding what were the natural and proximate results of the alleged defects and breach of warranty, and what damages were in the contemplation of the parties, and what defendants actually sustained.

Judgment affirmed.

