9945

PARHAM-THOMAS-McSWAIN, INC., v. ATLANTIC LIFE INSURANCE COMPANY.

(96 S. E. 697.)

1. FRAUD—NATURE AND ELEMENTS.—Fraud is a state of mind dependent on intent which is provable by circumstantial evidence.

2. EVIDENCE—WRITTEN AGREEMENTS—MERGER OF PRELIMINARY NEGOTIATIONS.—A written agreement between two persons merges all prior talk about the subject of the agreement.

3. EVIDENCE—PAROL EVIDENCE VARYING WRITTEN CONTRACT—PROOF OF FRAUD.—If a written agreement be procured by words, and with a fraudulent intent of the party claiming under it, parol evidence is competent to prove the facts constituting the fraud.

4. LOST INSTRUMENTS—PAROL EVIDENCE.—The proof of a contract evidenced by a lost writing is not proof of a parol agreement, but is a proof by parol testimony of a ·paper writing, lost or destroyed.

5. FRAUDS, STATUTE OF — CONTRACTS TO BE PERFORMED WITHIN ONE YEAR—PRESUMPTIONS.—Where an insurance agency contract does not affirmatively show that it is not to be performed within one year, it will be presumed that it is for one year, and the statute of frauds will not bar an action for its breach within the year.

6. INSURANCE—CANCELLATION OF AGENCY CONTRACT—FRAUD—EVIDENCE. —In an action for the wrongful cancellation of an insurance agency contract, evidence held to support a finding that the cancellation was fraudulent.

Before SMITH, J., Richland, Summer term, 1917.    Affirmed.

Action by Parham - Thomas - McSwain, Incorporated, against the Atlantic Life Insurance Company.    From a judgment for plaintiff, defendant appeals.

*Messrs. E. R. Williams and Lyles & Lyles,* for appellant,
submit: *The verdict and judgment appealed from must be
tested by the charge so far as concerns the question whether
there was any evidence to support the verdict:* 16 S. C. 1.
*There was no evidence of fraud:* (6 Otto) 96 U. S. 544; 24
L. Ed. 674; 81 S. C. 152-159; 97 S. C. 128.  *Plaintiff did
not rely on representations:* 97 S. C. 129; 82 S. C. 264; 82
S. C. 173; 69 S. C. 90.  *Plaintiff waived the fraud:* 20 Cyc.
92; 9 Am. St. Rep. 899; 14 Am. St. Rep. 112, and note 724;
63 S. C. 192.  *The written assignment contract merged all
prior oral negotiations:* 102 S. C. 138; 69 S. C. 39; (6 Otto)
96 U. S. 544; 24 L. Ed. 674; 81 S. C. 153.  *The contract
claimed to have been made was in violation of the statute of
frauds:* 57 S. C. 147; 33 S. C. 238; 60 S. C. 373; 18 S. C. 1;
(2 Bailey) 614; 34 S. C. L. (3 Strob.) 196; 3 S. C. 289; 26
S. C. 80; 35 L. R. A. 512; 50 L. R. S. (U. S.) 453.

*Mr. D. W. Robinson,* for respondent, submits: *That the
pleadings were sufficient to raise the issue of fraud:* 58 S
C. 59; 96 S. C. 241; 9 Enc. of Pl. and Pr. 695; 104 S. C.
233; 65 S. C. 184; 92 S. C. 393; 105 S. C. 123-4.  *There
was evidence to go to the jury:* 105 S. C. 410; 101 S. C.
256; 93 S. C. 541; 66 S. C. 489; 104 S. C. 157; 104 S. C.
415; 104 S. C. 30; 99 S. C. 241; 105 S. C. 120; 2 Hill (20
S. C.) 363-4; note in 19 A. & E. Ann. Cases; note 6 L. R.
A. 45-6; 104 S. C. 227; 2 Starkie's Evidence 46-7-8, and
note; 103 S. C. 405; 20 S. C. 508; 104 S. C. 226-7; 76 S. C.
316; 85 S. C. 130-1; 71 S. C. 152; 45 S. C. 502-2; Jones
on Evidence (2d Ed.), sec. 284; Greenleaf on Evidence
(16th Ed.), sec. 284; 151 N. C. 393; 31 L. R. A. (N. S.)
910, and note; 90 S. C. 321; 45 S. C. 496; 23 S. E. 622;
78 S. C. 425; 10 S. C. 451; 10 S. C. 449; 71 S. C. 146; 50
S. E. 780; 180 Pa. St. 165; 57 Amr. St. Rep. 627-8, and note;
122 Cal. 580; 68 Amr. St. Rep. 70, 73; 4 Rawle 141; 26
Am. Dec. 125; 10 R. C. L. 1059; 34 Pa. St. 365; 75 Am.
Dec. 671; 70 S. C. 115; 69 S. C. 330; 3 Rich. Eq. (24 S. C.
E.) 429; 12 L. R. A. (O. S.) 463-4; 52 S. C. 317; 45 S. C.

500-1; 44 L. R. A. (N. S.) 482, and cases in note; 6 R. C. L. 649-50; 32 S. C. 242; 71 S. C. 149; 81 U. S. 570; 20 L. Ed. 744; 70 S. C. 411; 39 S. C. 333; 68 S. C. 221, 235; note in 12 L. R. A. (O. S.) 463; 47 S. C. 183. *As to the statute of frauds:* 1 Greenleaf on Evidence (16 Ed.) 563c, 561; Jones on Evidence (2d Ed.), sec. 218; 26 S. C. 88-9; 57 S. C. 587; 2 Bail. (18 S. C. L.) 616; 35 L. R. A. (Mass.) 516-17, and note and cases at p. 514; 50 L. R. A. (N. S.) 458-60; 3 Strob. 199; McMull. Eq. 92; 10 Johns 245; 3 Bun. 1278; 2 Whart. 491; 57 S. C. 567-8; 175 Fed. 756; 99 C. C. A. 366; 149 U. S. 497; 37 L. Ed. 826; 63 S. C. 558; 44 L. R. A. (N. S.) 1217 (Wisc.); 49 N. J. 274: 8 Atl. 300; 3 Sandf. Ch. 279; 3 Ambler's Reports 586; 14 Vest. 386; 1 Johns Ch. (N. Y.) 131; 22 Grat. (Va.) 370; 8 App. Cas. 467; Browne on Statute of Frauds 455; 210 Fed. 725; 128 C. C. A. 227-8. *As to estoppel:* 42 S. C. 351; Bigelow on Estoppel (3d Ed.) 434; 67 S. C. 449; 102 S. C. 366.

March 26, 1918.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Trial in the Circuit Court for the breach of a contract, verdict for the plaintiff for $9,880, appeal by the defendant. The cause was here twice before (104 S. C. 223, 88 S. E. 470, and 106 S. C. 212, 90 S. E. 1022), and it has been tried on Circuit four times. The action springs out of a transactions betwixt Parham and the agents of the South Atlantic Life Insurance Company which ran through the years 1912 and 1913. Parham at the outstart on January 11, 1912, by a written contract then made, became a general agent for the South Atlantic Life Insurance Company in some seventeen counties of the State, to solicit and write life insurance. Within the two years mentioned (1912 and 1913), there was a devolution of the interest of the two parties to that initial contract. The South Atlantic Life Insurance Com-

pany became the Atlantic Life Insurance Company, and
Parham in July, 1913, organized a joint stock company
called the Parham-Thomas-McSwain Company to take the
interest which he had in the contract. These changes did
not at all affect the issues which have been made. While
the action is brought in the name of the Parham-Thomas-
McSwain Company, the real party is Parham; he is practical
owner of the company, and he is the person who is alleged to
have been wronged. The initial contract was amended
three several times by letter, and on January 9, 1914, nigh
two years to a day after its execution, the contract was
terminated by the act of the insurance company pursuant, it
is alleged, to the nineteenth paragraph of the contract. This
action assigns that termination as a wrongful breach, and
charges that it was done pursuant to a scheme of the insur-
ance·company to defraud Parham.

The cardinal dates of the whole transaction are these:
The original agency contract was made January 11, 1912.
The first letter amendment was made January 12, 1912.
The second letter amendment was made January 12, 1912.
The second letter amendment was returned by Parham to
defendant September 30. 1912. The third letter amend-
ment was made October 10, 1912. The Parham-Thomas-
McSwain Company was formed July 12, 1913. The con-
tract of January 11, 1912, was assigned to Parham-Thomas-
McSwain Company July 10, 1913. Parham bought out
Thomas' interest November 22, 1913. Thomas took a sub-
agency of the insurance company November 22, 1913. The
contract of January 11, 1912, was canceled January 9, 1914.
Thomas took the general agency February 14, 1914.

The appellant has made four exceptions to the Court's
refusal to direct a verdict, three exceptions to the Court's
refusal to order a new trial, and one exception to the Court's
charge. The printed brief has, however, stated and argued
only four issues, and they are these: (1) The issue of fact
submitted by the Court to the jury was not made by the

pleadings; (2) there was no evidence of fraud; (3) the assignment by Parham to the Parham-Thomas-McSwain Company of the contract of January 11, 1912, and the defendant's assent thereto merged all prior oral negotiations, (4) the disputed clause about the permanency of the contract was in derogation of the statute of frauds.

We shall pursue these four argued heads, but not separately, in the order of their statement; for the third and fourth subjects only suggest the existence of rules of law applicable to the testimony which exclude a consideration of the fraudulent intent. They, therefore, constitute but a part of the inquiry raised by the second subject. There are, then, really but two issues to be decided, to wit: (1) That first stated, and (2) that second stated.

On the first issue the appellant is mistaken to infer that our opinion on a former appeal (104 S. C. 227, 88 S. E. 470) limited the inquiry respecting fraud to any particular period of time or to any single transaction. After a recitation of the doings of the parties, starting with the execution of the contract· of January 11, 1912, and ending with the termination of the contract in January, 1914, the Court continued:

It is alleged "that all of this was done in furtherance of a scheme and purpose on the part of. the defendant to render the said stock valueless and to injure the plaintiff."

Nor does the complaint so limit the inquiry. It recites the transactions of two years' duration, ·and at paragraph 14 charges that the whole was done with evil intent. The whole transaction betwixt Parham and the defendant covered the years 1912 and 1913, and the intent and the acts of the defendant within those years about the matter in hand are all brought into question by the pleadings and by the testimony.

Fraud is a state of mind, and it may exist and never be detected, or it may exist and be evidenced only at irregular

intervals and by apparently unrelated circumstances. The intent is the warp of the transaction into which the acts of the persons are woven for the woof, and the intent runs from end to end of the transaction, sometimes seen and sometimes unobserved. And whether the intent did exist can rarely depend upon a single act in a particular time. A single circumstance standing by itself might appear to be of no bad import, but joined to another circumstance it might assume a bad aspect. All the circumstances together might warrant an inference that half of them would not sustain.

Coming to a consideration of the second subject—the proof of a reasonable existence of fraud—there lies in our path the two suggestions of the appellant made as subjects 3 and 4 in the argument, and urged to exclude any inquiry into the issue of fraud. It is contended by the appellant that when Parham assigned on July 10, 1912, to Parham-Thomas-McSwain Company his interest in the contract of January 11, 1912, he thereby "merged all prior oral negotiations." The assignment was therein expressed to be of "all his (Parham's) right, title and interest in a certain contract dated January 11, 1912, including the right to commissions as set forth in said contract or any amendments thereto."

It is axiomatic that a written agreement betwixt two persons merges all prior talk about the subject of the agreement. And the three cases cited by the appellant from our reports only hold so much. They are: *McCarty v. Insurance Co.*, 81 S. C. 153, 62 S. E. 1, 18 L. R. A. (N. S.) 729; *Lumber Co. v. Evans*, 69 S. C. 93, 48 S. E. 108; *Machine Co. v. Johnston*, 102 S. C. 138, 86 S. E. 489.

But it is just as well established that if the writing was procured by words and with a fraudulent intent of the party

claiming under it, then parol evidence is competent to prove the facts which constitute the fraud.    The fraud, of course, would not in the very nature of the case appear on the face of the paper writing, and it may have been conceived at a time prior to the execution of the paper, and be evidenced by acts done before that time. Indeed, if one party should set on foot a scheme to defraud another party and go about it, there is no sort of subsequent acknowledgment, short of a frank disclosure and condonation, which the first party may get from the second party that will reform a crooked transaction into an honest one. A suggestion by the defendants of the statute of frauds to bar the plaintiff's remedy has no relevancy to the facts. And the cases from our own Court cited by the appellant have, therefore, no relevancy.    They are: *Duckett v. Pool,* 33 S. C. 238, 11 S. E. 689; *Mendelsohn v. Banov,* 57 S. C. 147, 35 S. E. 499; *Hillhouse v. Jennings,* 60 S. C. 373, 38 S. E. 599.

The plaintiff rests its right on a contract alleged to have been evidenced by a letter of the defendant, and hereinafter referred to as the destroyed letter.    The proof of a contract evidenced by a lost writing is not proof of a parc agreement, but, on the contrary, is a proof by parol testimony of a paper writing lost or destroyed.    For so plain a rule of law on authority needs to be cited.    But assuming, as the defendant distinctly claims was the case, that a new contract was made in July, 1913, the date when the Parham-Thomas-McSwain Company was organized, and was by parol, yet the statute has no application to bar an action brought upon even such an agreement.  The essence of the alleged contract of July, 1913, was that if the new and paid premiums in a year, say from July, 1913, to July, 1914, should amount to $250,000, then, in effect there should be no rescission of the contract under paragraph 19, before quoted, but that the plaintiff might continue to serve as general agent.

The statute of frauds declares that "no action shall be brought upon any agreement that is not to be performed within the space of one year from the making thereof." The agreement must show that the performance of it is projected forward more than a year from the making of it. It does not affirmatively appear from the words of the contract that it was not to be performed within a year after July, 1913; on the contrary, the contract was presumptively for that year and was to be performed in that period of time. Before the lapse of a year from July, 1913, to wit, in January, 1914, the defendant breached the contract. The defendant suggests "that the plaintiff is suing for a breach of the contract *in futuro,* not for any compensation for work done by it under the contract; * * * this is a pure action on the contract to recover damages for failing to continue it." But that is not a correct statement of the case.

The defendant concedes the plaintiff is yet entitled "to the renewal commissions as they mature from time to time." They, therefore, are not involved in the breach. The plaintiff laid his damages in the destruction by the defendant "of said business and the confiscation of the same, and the value and effect of the labors, industry, skill and expenses of the plaintiff in building up the same, and to deprive the plaintiff of the fruits of its labors, and to reap the same for said defendant and Thomas." Paragraph 14, complaint. The gravamen of the plaintiff's case is that in 1912 and 1913 it had created a clientele by the use of labor and money, and the termination of the contract lost that labor and money to the plaintiff. On February 27, 1913, Taylor declared in a letter to Parham:

"Taking all of these facts into consideration, I should not say that $10,000 would be an unfair price to pay for your agency, particularly if you are to continue with the agency and further its upbuilding."

If the contract, therefore, was made in July, 1913, and for a year, the defendant breached it in January, 1914, and the damage laid is for labor done and money spent before 1914. For such an action the statute is plainly due no bar.

And this brings us directly to the main issue in the case, and that is, Does the testimony reasonably warrant a finding of fraud? This inquiry does not involve a nice weighing of the evidence, as a chancellor might feel constrained to do in the trial of such an issue in a Court of equity.

The question for us is, Ought a verdict approved by a Judge who had twice tried the case be set aside because it is unsupported by a reasonable inference to be drawn from the evidence?

The actors and witnesses in the transaction were: Parham, a resident of Columbia; Strudwick, president of the company and a resident of Richmond; Taylor, secretary and actuary of the company and a resident of Richmond; Smith, a quondam medical doctor, and by his own words "a go-between the president and secretary and the different agents;" Thomas, a college professor; and McSwain, the present insurance commisisoner of the State, made so since the instant transaction. The particular question of fact about which the parties are at issue is this: When the contract of January 11, 1912, was made, the nineteenth stipulation of it read that:

"Any rights of the agent under this agreement shall not be sold or assigned by him without consent of the company, in writing, but either party hereto may terminate this agreement upon 30 days' written notice, and when so terminated, no further commissions or other compensation shall thereafter accrue to the agent."

As before stated that contract was three times amended by letter of the defendant; the matter of the second amendment made the day after the date of the contract is the issuable substance; the letter which the plaintiff claims to have evidenced it is not now extant, but was destroyed by the

defendant at the suggestion of Parham; that letter, referred to as the destroyed letter, Parham says, had a clause in it which reserved to Parham the right to continue the agency contract for so long a time as the new and paid business amounted to $250,000 a year; the letter confessedly had other clauses in it which were not in the contract of January 11, 1912; the defendant utterly denies the making of any such amendment about a continuance of the contract, and such is the issue.

The testimony tended to show that "the value of an agency consists in its permanency." (McSwain.) Human experience and reason both confirm that statement. It is altogether probable, therefore, that Parham would desire to have a permanent agency, and it is probable, too, that the company would allow it on terms favorable to the company. Strudwick had considered the question "a hundred times or more" with agents of the company. About it he testified:

"That the only way to inject an element of permanency into life insurance contract was upon a basis of mutual interest and mutual confidence; that the agent must produce a sufficient amount of business to make his remuneration satisfactory, and the volume in turn must be satisfactory to the company. In other words, it must be an arrangement or an agreement where the faithful discharge of duties on both sides was in evidence as the result of the capacity of the agent and the co-operation of the company."

The element of permanency was, therefore, germane for insertion in a contract with the terms testified to by Parham, and under the rules testified to by Strudwick. The probable existence of the disputed clause in the destroyed letter is consistent with what Strudwick told McSwain in Richmond when the corporation of Parham-Thomas-McSwain was about to be organized. About that incident McSwain testified:

"I knew the 30-day cancellation clause was in those contracts. We discussed this cancellation clause with Mr.

Strudwick—I myself brought it up because I was interested in that. I asked Mr. Strudwick the question, if the contract would be continued upon minimum amount of business, namely, $250,000 per year. He said that it would. The value of an agency consists in its permanency. The permanency was an important element in its value. I knew that, and we discussed the value of the agency and what we would pay for it. And the permanency of that agent was an important element in its value."

And before McSwain went to Richmond the permanency clause was discussed with Smith; about that incident McSwain testified:

"Before Parham, Thomas, and I went to Richmond in July, 1913, all three of us had a conference with Smith in Newberry—probably a month before we went to Richmond. I asked Smith whether there was any condition by which this contract was permanent. He replied that the permanency of the business was contingent upon the production of a certain amount of business, $250,000 per year."

Parham testified directly to the point that the destroyed letter had such a clause in it; Strudwick and Smith and Taylor denied it; the truth of the case lay with the jury. If the destroyed letter had such a clause in it, and the jury has in effect found that to be true, was that, too, a "sore question" with Strudwick, and did he for that reason proceed to eliminate not only that clause, but Parham himself?

Strudwick by his own admission dealt unfairly with other agents; he granted to Parham a bonus of 5 per cent. which he did not grant to other agents and which he concealed from other agents, and that was a "sore question with Strudwick." (Smith and Strudwick.) Smith, the go-between for Strudwick, encouraged the formation of Parham-Thomas-McSwain Company, because he then (July, 1913) believed Parham was "going to be a failure;" Thomas remained in the company but four months; he was not satisfied with his "opportunity as a subagent;" he told the defendant "Parham

was not doing good work;" he was under the impression that if Parham was discharged he "would be the logical man;" he talked to Smith about selling to Parham, and Smith told him "to sit still in the boat;" and "the company would in some way or other take care of me;" Thomas was in Richmond without Parham's knowledge at the time Parham's contract was canceled; Thomas was made a subagent of the company the day after he sold out, and he was made general agent so soon as the 30 days expired. The inference is fairly reasonable that Smith used Thomas to be rid of Parham. If that be so, why?

Strudwick testified he canceled Parham's contract "because the production of business by the agency was unsatisfactory." But Strudwick was not so set in that opinion a short period of time before the cancellation of the contract. He wrote Parham on November 25th, "I have never felt any misgivings as to your loyalty to the company and its management." In the same letter he wrote:

"I now feel beyond all question that you have passed through the most trying times of your agency, and that with the nucleus of good producers which you now have in your agency ranks all you have to do is to set them an example of encouragement, enthusiasm and industry, keep with them or behind them all the time, and you will be astonished with the results of your next 30 days' work. I want you to feel every assurance of my renewed confidence and my earnest desire to assist you in every way in my power. You have now crossed the Rubicon and you must not look back, or turn back, but push forward with your mind intent upon reaching some definite goal."

Within 15 days after that, on December 10, 1913, Strudwick wrote Parham this:

"The best refutation of your claim that you have been loyal and industrious in your efforts to serve the company is the fact that for the first 10 months of this year you paid for $29,000 of business, and had lapses under your personal

business of $27,500, leaving $1,500 of paid-for business to represent your personal production during the first 10 months."

The inference is fairly reasonable that Strudwick had other and sinister reasons to cancel the contract than those he testified to. If Strudwick was moving in good faith under paragraph 19 of the contract to abrogate the agreement, as was his right if this destroyed letter had no permanency clause in it, then there was no reason to resort to all the subterfuges revealed by the testimony. The circumstance that the rescission was accomplished in the way it was accomplished gives reasonable ground to infer that under the real terms of the agreement the rescission could not have been effected in any other way.

All the exceptions are overruled, and the judgment is affirmed, but without costs for printing the respondents' argument. That document violates section 3 of rule 9.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and FRASER concur.

MR. JUSTICE HYDRICK. I concur in the disposition of the first and fourth issues, but dissent as to the second and third, which I think should be sustained, and the judgment should be reversed.