## 12071

### CONTINENTAL JEWELRY CO. v. KERHULAS

#### (134 S. E., 505)

1. EVIDENCE.—Generally, parol testimony cannot be offered to vary terms of written agreement.

2. CONTRACTS.—Actionable fraud will vitiate a contract.

3. EVIDENCE.—Testimony in support of allegations of fraud in procurement of instrument is admissible, though it may tend to vary terms of written instrument.

4. FRAUD.—Much latitude is allowed in admission of evidence on issue of fraud.

5. FRAUD.—Fraud may be proved by circumstances.

6. TRIAL.—Credibility of witnesses and value of testimony are questions for jury.

---

NOTE.—(1) Parol evidence not admissible to vary, add to, or alter a written instrument, see note in 17 L. R. A., 270; 10 R. C. L., 1017; 2 R. C. L. Supp., 1139; 4 R. C. L. Supp., 686; 5 R. C. L. Supp., 582.

(2) Fraud as vitiating contract, see 6 R. C. L., 635; 2 R. C. L. Supp., 170; 4 R. C. L. Supp., 430.

7. Sales—In Action for Purchase Price of Jewelry, Where Defendant Pleaded Fraud, Verdict for Plaintiff Held Erroneously Directed.—In action for purchase price of jewelry bought under written contract, where defendant alleged fraud in procurement of contract, evidence in support of such allegation, improperly excluded, *held* sufficient to have gone to jury, and verdict for plaintiff erroneously directed.

8. Sales.—Defendant *held* not so negligent in signing contract for purchase of jewelry without reading or having it read as to preclude defense of fraud when sued thereon.

Before Nickles, Special Judge, Union, May, 1925. Reversed and new trial ordered.

Action by the Continental Jewelry Company against A. Kerhulas. Verdict for plaintiff was directed, and defendant appeals.

*Mr. J. G. Hughes,* for appellant, cites: *In construing contract Court will notice situation of parties:* 124 S. C., 286. *Contracts construed in light of intention of parties:* 160 F., 596; 87 C. C. A., 498; 170 N. C., 315; 86 S. E., 1051. *Case distinguished:* 124 S. C., 216; 127 S. E., 270. *Duty of party to read contract before signing if able to do so:* 129 S. C., 234; 108 S. C., 417.

*Mr. Edward B. Smith,* for respondent, cites: *Granting of nonsuit discretionary with trial Court:* 124 S. E., 7; 90 S. C., 122; 87 S. C., 367; 82 S. C., 12. *Parol evidence rule:* 127 S. E., 270; 123 S. E., 845; 119 S. E., 581; 124 S. C., 211; 121 S. C., 437; 114 S. E., 412; 120 S. C., 375; 113 S. E., 330; 120 S. C., 211; 112 S. E., 921; 91 S. C., 316; 83 S. C., 204; 65 S. E., 272. *Defendant had means of learning terms of contract:* 123 S. E., 848.

September 21, 1926.

The opinion of the Court was delivered by Mr. Justice Blease.

The plaintiff, who is the respondent, brought suit against the defendant, the appellant, in the Court of Common pleas for Union County to recover the purchase price of

jewelry, alleged to have been purchased of plaintiff by defendant.

The action was based upon a contract, on a written form furnished by plaintiff, signed by defendant. The instrument provided *inter alia,* that plaintiff's agent had no authority to vary its terms; that no goods were sold on consignment; that goods not sold would be exchanged on certain conditions at purchaser's request; that upon delivery of the goods, notes were to be accepted for the purchase price.

In the answer, the defense of fraud was set up, the following facts being alleged: Defendant was uneducated, and, while he could sign his name, he could not intelligently read and write the English language, and other persons attended to his correspondence and the keeping of his books and accounts; that plaintiff's agent approached him with regard to the jewelry, and when defendant declined to purchase, the agent fraudulently represented to him that he was only signing a contract to sell the goods on commission, or consignment, and that at any time he could return the goods if he did not care to continue the business of selling on commission; that he would not have signed the instrument had he not been misled and deceived by the fraudulent conduct of the agent; and when he discovered that a fraud had been committed upon him, he refused to sign the notes, as requested by plaintiff, and offered to return the jewelry.

The evidence on behalf of the plaintiff went to show that the matter of the purchase of the jewelry was fully explained by plaintiff's agent to the defendant and was a fair transaction; that a daughter of the defendant and a friend of his were present when the contract was executed; and that the friend also signed a contract similar to the instrument executed by the defendant.

On the part of the defendant, there was testimony offered to the effect that he is a Greek, and, while he can

sign his name in English, that he can read and write that language but little; that the agent (admitted by plaintiff to have been working on a commission basis) represented to defendant that the goods would be handled on commission, and defendant "would not have to put out one penny thereon"; that the contract was not read by defendant or to him, and that he accepted the agent's word as to its contents; that daughter of the defendant was not present when the paper was signed; that the other person present who also signed a like contract, did not read it or explain its contents to defendant; that upon discovery that the jewelry was sold outright, and not on consignment, the other purchaser canceled his contract, with plaintiff's consent, although this purchaser could read very well, and sometimes advised defendant about his affairs; that upon discovery of the alleged fraud committed upon him, defendant refused to execute the notes requested by plaintiff, and offered a return of the goods; that later another agent of plaintiff offered to accept a return of the jewelry. Much of the testimony offered by defendant was objected to by plaintiff on the ground that it tended to vary the terms of a written instrument and such objection was sustained.

After hearing all the testimony, the trial Judge granted plaintiff's motion for a directed verdict for the full amount demanded in the complaint. The Court gave as his reason for granting the motion that, in view of the testimony before him, he could not let the case go to the jury on the question of fraud. He stated that he based his legal conclusion upon the authority of two decisions of this Court, namely, *J. B. Colt Co. v. Freeman,* 124 S. C., 211; 117 S. E., 351, and *Harrison v. Southern Railway Co.,* 131 S. C., 12; 127 S. E., 270.

From the directed verdict, the defendant has appealed on the ground that there was sufficient testimony to send the case to the jury upon the issue of fraud.

In the *Freeman case,* cited by the trial Judge, this Court

approved a verdict, directed for the plaintiff, in an action on a written contract, where the parol evidence of the purchaser (the defendant) as to his understanding as to the agreement was held inadmissible because there was a provision contained in the contract that the writing embraced all its terms, there being no proof of fraud. In that case, the ruling was sustained on the ground that the appellant had failed to show that the discretion of the Circuit Judge had been erroneously exercised. Even there, Mr. Justice Cothran, in a dissenting opinion, concurred in by the late Mr. Justice Fraser, thought "there was enough evidence of fraud and of the right to a reformation to render the evidence admissible and to require the Circuit Judge to pass upon the equitable defense of reformation." In the *Freeman case,* the Circuit Judge made use of this language:

"Now, in the law, people must read their contracts. * * * If he cannot read, he must try to find some one to read it for him."

It will be noted that in the opinion in that case, written by Mr. Chief Justice Gary, the words of the Circuit Judge which have been quoted were not particularly referred to, but the same were later approved in the *Harrison case,* also relied upon by the trial Judge as authority. In the *Harrison case* the plaintiff claimed her signature to a release, executed by her, to a railway company, had been secured by fraudulent representations, and obtained judgment in her action. The refusal to grant a nonsuit was reversed by this Court for the reason that "the allegations of fraud made in the complaint, * * * were entirely insufficient to warrant any testimony pertaining thereto." To support that holding, the writer of that opinion, Hon. W. C. Cothran, Acting Associate Justice, cited in two cases: *Gem Chemical Co. v. Youngblood,* 58 S. C., 56; 36 S. E., 437, and *Colt v. Freeman, supra.* He used the words quoted hereinabove from the *Freeman case.* In connection with other holdings in the *Harrison case,* it was decided

that, since the plaintiff pleaded fraud in the procurement of the release, which she had given, but had made no offer to return the consideration received therefor, she was barred of any right to recover.

The main principle announced in *Gem Chemical Co. v. Youngblood, supra,* in which the opinion was written by the present Chief Justice, was this:

"In order to constitute a defense to the plaintiff's cause of action on the ground that the defendants were deceived by misrepresentation and fraud, it was necessary to allege a *scienter* on the part of the plaintiff. [Citing cases.] * * * The answer fails to allege fraud and misrepresentations, and there was no error in rejecting the evidence offered to prove them."

Because of the view expressed by the Court in that cause, the ruling of the Circuit Judge refusing to admit testimony going to establish fraud was approved.

Another case touching the subject under investigation, citing the *Freeman case, supra,* as authority, is that of *J. B. Colt Co. v. Britt,* 129 S. C., 226; 123 S. E., 845. In that case this Court approved the rule laid down in *Baldwin v. Postal Telegraph Cable Co.,* 78 S. C., 419; 59 S. E., 67, as follows:

"The rule is, a person who is unable to read is bound to have the paper read to him before signing, just as a person who can read is bound to read it before signing."

But in the *Britt case* it was also said:

"But as recognized in *Baldwin v. Cable Co.* [78 S. C., 419; 59 S. E., 67], *supra,* it is equally well settled that if the party who signs a written contract in ignorance of its contents without reading it or having it read is induced to sign by conduct of the other party which amounts to actionable fraud, this may give the signer the right to avoid the contract as against him on the ground of fraud. 13 C. J., 371, § 250."

In the *Britt case* the directed verdict for plaintiff was

approved, but mainly upon the theory that the defendant there, who claimed that he had been imposed upon in the matter of securing his signature to the written instrument, was guilty, according to the testimony, "of inexcusable inattention, tantamount to a willful disregard of his duty to protect his own interest in the transaction, which proximately contributed to his injury, and that such misconduct should be held to preclude him from asserting a right to avoid the contract for fraud."

We think all the cases mentioned heretofore are really in harmony, and that they simply restated two well-established principles of the law, both of which are reasonable and correct, and each of which we should always endeavor to maintain. The first of these is the rule that, generally, parol testimony cannot be offered to vary the terms of a written agreement. The second is that actionable fraud will vitiate a contract. These two principles are not in conflict. They can and do aid materially in a proper administration of justice. When investigating questions in which both these principles are involved, we like to read the forceful language of that great lover of honest dealings between men, the late Mr. Justice Gage, which was indorsed by Chief Justice Gary, Justice Watts and Justice Fraser in *Parham v. Atlantic Life Insurance Co.,* 111 S. C., 37; 96 S. E., 697, when he said:

"It is axiomatic that a written agreement betwixt two persons merges all prior talk about the subject of the agreement. * * * But it is just as well established that if the writing was procured by words and with a fraudulent intent of the party claiming under it, then parol evidence is competent to prove the facts which constitute the fraud. The fraud, of course, would not in the very nature of the case appear on the face of the paper writing, and it may have been conceived at a time prior to the execution of the paper, and be evidenced by acts done before that time.

Indeed, if one party should set on foot a scheme to defraud another party and go about it, there is no sort of subsequent acknowledgment, short of a frank disclosure and condonation, which the first party may get from the second party that will reform a crooked transaction into an honest one."

It appears from the record that the defendant here 3, 4 met the requirments laid down in the case of *Gem Chemical Co. v. Youngblood, supra,* as his answer properly alleged fraud, and charged a *scienter* on the part of the plaintiff. That being true, he had the right to offer testimony to prove his allegations of the fraud set up. Even is this so although the testimony sought to be introduced tended to vary the terms of the written instrument, when it is alleged that such instrument was procured as the result of the fraud charged. *Parham v. Atlantic Life Insurance Co., supra.* When fraud is charged, much latitude is allowed in admission of evidence on that issue. *Aldridge v. Watts Mill,* 131 S. C., 222; 127 S. E., 213.

The question,, then, for determination, at this time, succinctly stated, is this: Was there before the Court sufficient testimony, or was such testimony offered and not admitted, on the issue of fraud in procuring the execution of the contract, to give the defendant the right to have the jury pass upon the defense pleaded?

In reaching an answer to the inquiry stated, we must remember that it was the duty of the defendant to read the contract he was requested to sign, or to have it read and explained to him by some other person, if he was not capable of reading understandingly for himself, as laid down in the *Harrison case, supra.* We must bear in mind also the view expressed in the *Britt case, supra,* that if the defendant was guilty of "a willful disregard of his duty to protect his own interest in the transaction, which proximately contributed to his injury," then he is precluded from asserting a right to avoid the contract for fraud. Too,

31—S. C.—136.

we must not overlook the principles, so clearly announced by Mr. Justice Woods in the *Baldwin case, supra,* when speaking of the duty of persons to take precaution as to their signing written instruments, when he said, in stating the same proposition referred to by Mr. Justice Gage in the *Parham case:*

"If one of the parties induces the other to sign a paper in reliance upon his representation as to its contents, and the representation turns out to be untrue and fraudulently made, the party who relied on it is not bound to him who deceived him into signing the paper."

Let us not forget, too, that rule of the law of evidence which allows fraud to be proved not only by direct or positive evidence, but by circumstantial evidence as well, and remember, also, that it has even been held that in cases where fraud is charged the rules of evidence are not so strictly enforced as in other cases. *Border State Lumber Co. v. Edwards,* 103 S. C., 391; 88 S. E., 537. And our Court has gone so far as to announce that "the charge of fraud renders admissible all testimony necessary to sustain it." *Burch v. Brantley,* 20 S. C., 503.

In finding the answer to the question asked, applying all the legal principles to which attention has been called, let us be not forgetful that, along with these, is the constitutional right given to a party in a law case, when his money is demanded of him, and, in his defense, he charges that a fraud has been committed upon him, that generally he has the right to have a jury pass upon that defense. When his charge has been legally set forth, as it appears was done in the case at bar, about the only thing that can defeat his right to this trial by jury is his failure to offer some evidence to substantiate the plea interposed.

We think that the repeated holding of this Court to the effect that the jury is the proper authority to judge of the credibility of witnesses, and to value and appraise the testimony presented, is too well settled to

make the citations of cases necessary to sustain that doctrine.

Because of the view we take in this matter, it would, perhaps, be improper at this time to call attention specifically to the evidence offered by the defendant, which, in our opinion, was sufficient to have authorized the trial Judge to permit the jury to pass upon the issues in the cause. We only go so far at this time to say that there was evidence offered, about which, its effect, weight and credibility we express no opinion, that "the writing was procured by words with a fraudulent intent of the party (through one of its agents) claiming under it." And there was testimony offered that one of the parties induced "the other to sign the paper in reliance upon his representation as to its contents," which representations turned out, according to some of the testimony presented, "to be untrue and fraudulently made." If the testimony was true (and that was for the jury to determine), then "the party who relied on it is not bound to him who deceived him into signing the paper."

Finally, we come to this point: Was the ruling of the *Britt case, supra,* as to the law of negligence on the part of one imposed upon by the fraudulent conduct of another, violated by defendant herein? In that case, Mr. Justice Marion, the writer of the opinion of the Court, carefully reviewed the testimony, and it appears that the defendant there, who had charged fraud in the procurement of his signature, though fully competent to read understandingly, admitted that he "was in a hurry"; that he did not read the contract, although he ought to have done so; and that he was "a little too careless." In this case there was no such admission on the part of the defendant. And there was some evidence that another person, more in position to understand contracts, and their terms, thought the writing was agreeable to the spoken words, and, in the presence of the defendant, signed a similar instrument. It

is not for us to say that the defense set up was established, and we wish it distinctly understood that we express no opinion in that regard, but we are compelled to hold that there was evidence which should have carried the case to the jury.

The exception of the appellant is sustained, and the verdict directed in behalf of the plaintiff is reversed and set aside, and a new trial is hereby ordered.

MESSRS. JUSTICES WATTS, COTHRAN and STABLER concur.

MR. CHIEF JUSTICE GARY did not participate.